**WEAVER–BAILEY CONTRACTORS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 137–87C.

United States Claims Court.

April 17, 1990.

Charles Darwin Davidson, with whom was Clark Mason, Little Rock, Ark., for plaintiff.

Paul Langer, with whom were Stuart M. Gerson, Asst. Atty. Gen., and David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## ORDER

SMITH, Chief Judge.

In its February 9, 1990 opinion, the court awarded plaintiff Weaver–Bailey Contractors an equitable adjustment of $469,041 for increased costs of contract performance. *Weaver–Bailey Contractors v. United States*, 19 Cl.Ct. 474 (1990). The court found that the government's defective specifications led to a delay in completing the contract, and concluded that plaintiff's increased costs stemming from the delay were compensable under the contract's Differing Site Conditions clause. Defendant now asks the court to reconsider its ruling, asserting, as it did in its post-trial brief, that the portion of damages awarded for equipment rental charges was too high. For the reasons set forth below, defendant's motion for reconsideration is denied.

■ "A motion for a new trial in a nonjury case or a petition for rehearing should be based upon manifest error of law or mistake of fact, and a judgment should not be set aside except for substantial reasons." Wright & Miller, *Federal Practice and Procedure*, Civil section 2804 (quoted approvingly in *McConney v. Great Atlantic & Pacific Tea Co.*, 455 F.Supp. 1143 (E.D.Pa.1978)). "Whatever may be the purpose of [a motion for reconsideration], it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge." *Durkin v. Taylor*, 444 F.Supp. 879, 889 (E.D.Va.1977). Thus, a motion for reconsideration should not be used as a substitute for an appeal. As the court stated in *Frito–Lay of Puerto Rico, Inc. v. Canas*, 92 F.R.D. 384, 391 (D. Puerto Rico 1981): "To the extent that the motion for reconsideration merely reas-

serts ... arguments previously made ...,
all of which were carefully considered by
the court ..., there is no reason to vacate
the Court's earlier Opinion and Order."

With the above considerations in mind,
the court now turns to the substance of
defendant's motion for reconsideration.
$199,450 of the $469,041 awarded plaintiff
were attributable to the costs of renting
earthmoving equipment from M.R.S. Enter-
prises, a firm owned and controlled by Mar-
ion Stephenson. 19 Cl.Ct. at 484. Defen-
dant now challenges this portion of the
damages award as too high, arguing that
in light of the relationship between Weav-
er–Bailey and Marion Stephenson, equip-
ment charges should have been assessed at
lower ownership rates. Defendant relies
on Special Clause 10 of the contract, which
provides:

EQUIPMENT OWNERSHIP AND OP-
ERATING EXPENSE

10.1 Allowable cost for construction
and marine plant and equipment in sound
workable condition owned or controlled
and furnished by a Contractor for work
requiring adjustment in contract price
shall be based upon actual costs, provid-
ed both ownership and operating costs
for each piece of equipment or equipment
groups of similar serial and series are
proposed by the Contractor or known by
the Contracting Officer to be avail-
able.... When actual costs are neither
proposed not [sic] known to be available,
equipment costs shall be based upon the
applicable provisions of the "Construc-
tion Equipment Ownership and Operat-
ing Expense Schedule," Region VI....

10.2 Equipment rental costs are allow-
able, subject to the provisions of FAR
15.205–36 [now 31.205–36], substantiated
by certified reproduced copies of invoices
or bills. Rates for equipment rented
from an organization under common con-
trol, lease-purchase or sale-leaseback ar-
rangements will be determined in accord-
ance with the schedule. A copy of the
schedule will be provided to the success-
ful bidder upon request.

FAR 31.205–36 (Oct. 1, 1988) provides:

(a) This subsection is applicable to the
cost of renting or leasing real or personal
property....

(b) The following costs are allowable:

(1) Rental costs under operating leases,
to the extent that the rates are reason-
able at the time of the lease decision,
after consideration of (i) rental costs of
comparable rental property, if any; (ii)
market conditions in the area; (iii) the
type, life expectancy, condition, and val-
ue of the property leased; (iv) alterna-
tives available; and (v) other provisions
in the agreement.

\*     \*     \*     \*     \*     \*

(3) Charges in the nature of rent for
property between any divisions, subsidi-
aries, or organization under common con-
trol, to the extent that they do not ex-
ceed the normal costs of ownership, such
as depreciation, taxes, insurance, facili-
ties capital cost of money, and mainte-
nance (excluding interest or other unal-
lowable costs pursuant to Part 31), pro-
vided that no part of such costs shall
duplicate any other allowed cost. Rental
cost of personal property leased from
any division, subsidiary, or affiliate of
the contractor under common control,
that has an established practice of leas-
ing the same or similar property to unaf-
filiated lessees shall be allowed in accord-
ance with subparagraph (b)(1) above.

\*     \*     \*     \*     \*     \*

■ The central question presented by
defendant's motion for reconsideration is
whether Weaver–Bailey and M.R.S. Enter-
prises should be treated as being under
"common control" for purposes of FAR
31.205–36(b) and Special Clause 10 of the
contract. Defendant seizes on the court's
comment in footnote 4, 19 Cl.Ct. at 478,
that Weaver–Bailey and Mr. Stephenson
were co-venturers on the Arcadia Lake
project, and argues now that the court
"found" that Weaver–Bailey and M.R.S.
Enterprises were under common control.

Footnote 4 reads in full:

Defendant attacked Mr. Stephenson's
credibility by introducing evidence that
Mr. Stephenson settled a lawsuit against
Weaver–Bailey arising out their relation-
ship as co-venturers on the Arcadia Lake

contract, in exchange for a share in any judgment that might be recovered in the present suit. Weaver–Bailey and Mr. Stephenson had bid the Arcadia Lake project together, with Mr. Stephenson and Weaver–Bailey agreeing to split any profits and share any losses. Mr. Stephenson sued Weaver–Bailey, believing that it was the only way to protect his interest in the Arcadia Lake venture, since he was not a party to the contract with the government. Defendant wished to create the impression that Mr. Stephenson's testimony was unreliable, in light of his financial interest in the outcome of this litigation. The court merely notes that Mr. Stephenson's testimony is no less reliable than that of most friendly witnesses called by a contractor seeking an equitable adjustment. Mr. Stephenson does stand to gain from a ruling in favor of Weaver–Bailey, but virtually every head or senior employee of a plaintiff in a suit in this court stands to gain from a favorable decision. While this is a factor to be weighed, it does not in and of itself destroy reliability.

The court's comments were made for the limited purpose of explaining that Mr. Stephenson was a credible witness, notwithstanding his relationship with Weaver–Bailey. Defendant now quotes the court out of context; nowhere in footnote 4 did the court discuss the applicability of contract clauses or FAR provisions relating to rental equipment.

The court concluded in its earlier opinion, and it reaffirms today, that Weaver–Bailey and Mr. Stephenson should not be treated as being under common control for purposes of determining proper rates for rental equipment. Special Clause 10 and FAR 31.205–36 are aimed at preventing a business entity from leasing equipment at inflated rates to a parent, subsidiary, or sister entity, for use on government jobs. The drafters of the relevant contract clauses and FAR provisions recognized that certain purely formal business arrangements should be disregarded, and rented equipment should be treated as contractor-owned equipment, where the contracting entity is so tied to the renting entity that for all intents and purposes the contractor owns the "rented" equipment.

Although Mr. Stephenson helped Weaver–Bailey prepare its bid, Mr. Stephenson had no rights under the contract. Neither Weaver–Bailey nor any entity financially tied to Weaver–Bailey made any capital investment in the equipment at issue here. Furthermore, the court finds highly significant the fact that Mr. Stephenson sued Weaver–Bailey, worrying that if Weaver–Bailey recovered in the present action, he might recover nothing. The conclusion that Weaver–Bailey and M.R.S. Enterprises were under common control cannot stand side by side with the fact that Marion Stephenson sued Weaver–Bailey. There is nothing in the record to indicate that M.R.S. Enterprises was just a sham business arrangement formed for the purpose of inflating equipment rental rates, nor is there any reason to believe that Mr. Stephenson took the extraordinary step of bringing a sham lawsuit against Weaver–Bailey in an effort to preserve the appearance that the two entities were indeed separate.

■ Assuming *arguendo* that equipment ownership rates, rather than rental rates, should apply, the court would be faced with the problem of recomputing damages based on the "Construction Ownership and Operating Schedule" referred to in Special Clause 10, a document which is not in the record. Defendant asks the court to take judicial notice of the schedule, or to reopen the record to allow defendant to submit it. However, litigation must come to an end at some time. The schedule was available and known to defendant at trial nearly one year ago, yet defendant declined to introduce it into evidence. It is far too late in the day for the court to be considering new evidence.

■ It should be noted that neither Special Clause 10 nor FAR 31.205–36 addresses the question of which party bears the burden of proof of showing damages at trial. As a general matter, a contractor seeking an equitable adjustment bears the burden of proving entitlement to compensa-

tion. *See, e.g., Lisbon Contractors v. United States,* 828 F.2d 759, 767 (Fed.Cir. 1987); *G & H Machinery Co. v. United States,* 16 Cl.Ct. 568, 571 (1989). However, plaintiff has produced credible proof of its damages. The time for defendant to come forward with evidence in rebuttal of plaintiff's evidence has long passed.

Defendant asserts that the court placed an "impossible burden" on defendant. Specifically, defendant says that it is being asked to "disprove a negative," *i.e.,* that M.R.S. Enterprises did not have an established practice of leasing equipment. However, defendant cross-examined Mr. Stephenson at length at trial, and did not even ask whether Mr. Stephenson had an established practice of leasing. Defendant's contention that the "party with [the] best knowledge normally bears [the] burden of proof of a disputed fact" is inapposite, because defendant never placed the fact of Mr. Stephenson's other leasing activities in dispute.

For the foregoing reasons, defendant's motion for reconsideration is DENIED.