**WETSEL–OVIATT LUMBER COMPANY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 94–411C.

United States Court of Federal Claims.

May 25, 1999.

Gary G. Stevens, Saltman & Stevens, P.C., Washington, DC, for plaintiff, Kevin R. Garden, of counsel.

John S. Groat, Civil Division, Department of Justice, Washington, DC, for defendant, David M. Cohen, Director, Kathryn A. Bleecker, Assistant Director, and Frank W.

Hunger, Assistant Attorney General. Jeff Moulton, Office of General Counsel, Department of Agriculture, San Francisco, CA, of counsel.

## *OPINION*

MARGOLIS, Judge.

This pre-award bid protest action, in which the court has already held a trial and issued an opinion, is currently before the court on Plaintiff's Motion for Judgment and Comments on Defendant's Response to the Court's Order of February 6, 1998 ("Plaintiff's Motion for Judgment"). Plaintiff contends that it is entitled to entry of judgment in its favor with an award of costs because the court's February 6, 1998 Order enjoined defendant from canceling the Bald Mountain timber sale, as plaintiff requested. Plaintiff also contends that the alternative ground for canceling the Bald Mountain timber sale proffered by defendant in the Forest Service's response to the court's February 6, 1998 Order ("Forest Service Response") is inappropriate at this time. After careful consideration of the parties' written and oral arguments, the court finds that plaintiff is entitled to entry of judgment in its favor with an award of costs. Because the comments section of plaintiff's motion does not constitute a formal protest of the Forest Service's current decision to cancel the Bald Mountain timber sale, the court refrains from addressing that issue at this time.

## FACTS

A detailed recitation of the facts in this case is presented in the court's February 6, 1998 opinion, *Wetsel–Oviatt Lumber Co. v. United States*, 40 Fed.Cl. 557 (1998), and is summarized and supplemented here only as necessary to address the issues presently before the court.

On November 2, 1992, the Forest Service conducted an oral auction for the sale of an estimated 4,380 thousand board feet ("MBF") of timber known as the Bald Mountain timber sale, located on the Eldorado National Forest in California. The timber sale was planned and offered to the public pursuant to the requirements of the National Forest Management Act ("NFMA"), 16 U.S.C. §§ 1601 *et seq.*, National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, and Multiple Use Sustained Yield Act of 1960, 16 U.S.C. §§ 528–531. Plaintiff participated in the oral auction and was determined by defendant to be the high bidder. Notwithstanding plaintiff's high bid, defendant neither awarded the Bald Mountain timber sale to plaintiff, nor rejected plaintiff's bid, on November 2, 1992.

At the time the Bald Mountain timber sale was planned, the Forest Service's management strategy for the California Spotted Owl centered on the designation and preservation of Spotted Owl Habitat Areas ("SOHAs"). In July 1992, just prior to the oral auction of the Bald Mountain timber sale, the Forest Service issued *The California Spotted Owl: A Technical Assessment of Its Current Status* ("CASPO Report"), which concluded that the existing SOHA management strategy would likely lead to the extinction of the California Spotted Owl, and recommended that a new, long-term strategy be developed. Until such a new, long-term strategy could be developed, however, the CASPO Report recommended the implementation of interim guidelines to preclude any actions that would "foreclose options for whatever long-term management scenario may be adopted for the owl at the end of the interim period." CASPO Report at 20.

The CASPO Report set forth a harvest prescription to be followed in the interim period. Specifically, the CASPO Report recommendations proposed the creation of 300–acre Protected Activity Centers ("PACs") around all currently known spotted owl sites, within which no stand-altering activities would be permitted. Outside of the PACs, but within timber strata[1] preferred or utilized for nesting by spotted owls, no live trees of 30 inches diameter at breast height ("dbh") or larger would be removed and a canopy closure of at least 40% would be maintained in certain timber stands. The CASPO Report recommendations represented a shift from the existing

---

1. "Timber strata" refers to areas of relatively similar vegetation.

forest management theory, based on analysis of individual timber units within the national forest, to "ecosystem management," based on analysis of multiple ecosystems within the entire national forest as a whole. Whereas the existing theory, called even-aged management, was characterized by clear-cutting the various units of the forest in rotation, such that by the time the last unit was cut the first unit had regrown, the CASPO interim guidelines emphasized analyzing the entire forest as a whole and cutting timber selectively within units. On January 13, 1993, the Forest Service adopted the CASPO Report recommendations as the guidelines to be followed during the interim period and amended the existing Land and Resource Management Plan ("LRMP") for the Eldorado National Forest to incorporate the interim guidelines.

During this same general period, in the Fall of 1992, the Forest Service was advised by various individuals and environmental groups that new information and changed circumstances required the Forest Service to reconsider whether the Bald Mountain timber sale still complied with NEPA, NFMA, Forest Service regulations, and the Eldorado National Forest LRMP. Based on this concern, and in light of the new information presented in the CASPO Report and the new management direction in the interim guidelines, the Forest Service decided in March of 1993 to withhold award of the Bald Mountain timber sale to plaintiff while it conducted further environmental review of the sale. After an initial review suggested that the Environmental Assessment supporting the Bald Mountain timber sale needed to be revised and further analyzed pursuant to NEPA, the Forest Service commissioned a long-term interdisciplinary team to further evaluate the effects of the timber sale on wildlife, vegetation, and water quality.

The Forest Service's broad-based review of the Bald Mountain timber sale comprised primarily three analyses: a biological evalua-tion of the potential effects on forest strata due to timber sales on the Eldorado National Forest ("Landscape Analysis"); a biological evaluation of the potential effects on the Pacific Fisher[2] due to timber sales on the Eldorado National Forest ("Fisher BE"); and a biological evaluation of the cumulative effects on the California Spotted Owl due to timber sales on the Eldorado National Forest ("Owl BE").

The Owl BE is particularly relevant to the current issue before the court. Although the Forest Service did not apply the CASPO harvest prescription to the 31 Eldorado National Forest timber sales, it did rely on the Owl BE to determine if the timber sales would maintain future management options for the spotted owl, as directed by the CASPO interim guidelines. To measure the impact of the sales on the future management options, Forest Service biologists developed the disturbance index methodology. The disturbance index is a ratio representing the California Spotted Owl habitat removed from an owl Protected Activity Center by a timber sale (weighted for its value to the owl) to the California Spotted Owl habitat available at an owl Protected Activity Center (weighted for its value to the owl). Forest Service biologists reasoned that any timber sale that removed greater than 5% of the future management options for the spotted owl (i.e., had a disturbance index of greater than 5%) was not in accord with the CASPO interim guidelines. Based on timber data from a 1991 Forest Service Vegetation Inventory and without independent ground verification, the Owl BE concluded that the Bald Mountain timber sale "substantially affected" two owl sites within the timber sale area because the disturbance index associated with the two owl sites was above the 5% maximum established by the Forest Service. By early 1994, the Forest Service had also completed the Landscape Analysis and the Fisher BE, both of which similarly concluded that the Bald Mountain timber sale would have deleterious environmental impacts.[3]

2. The Pacific Fisher is a weasel-like mammal found mainly in the western United States.

3. The Landscape Analysis concluded that harvesting of the Bald Mountain timber would violate Management Practice 56 of the Forest-Wide Standards and Guidelines set forth in the Eldorado National Forest LRMP by reducing the percentage of 4G timber strata (strata containing the largest average tree diameter and the highest percentage of canopy cover) to an impermissibly

Based on the three environmental analyses commissioned by the Forest Service, defendant informed plaintiff by letter dated February 24, 1994 that all bids for the Bald Mountain timber sale were being rejected and that the Bald Mountain timber sale would not proceed. Defendant posited three reasons for its decision to cancel the sale: (1) harvest of the Bald Mountain timber sale would have significant adverse effects on habitat for the California Spotted Owl and foreclose future management options for the California Spotted Owl; (2) harvest of the Bald Mountain timber sale would have significant adverse effects on habitat for the Pacific Fisher; and (3) harvest of the Bald Mountain timber sale would violate the forest guideline for 4G timber strata under the Eldorado National Forest LRMP.

In response to defendant's decision to cancel the timber sale, plaintiff filed its pre-award bid protest action with this court on June 24, 1994. Plaintiff argued that the Forest Service lacked a reasonable basis for canceling the timber sale because the timber data relied on by the Forest Service as the basis for its decision to cancel the timber sale was erroneous and unreliable. Plaintiff sought a preliminary injunction enjoining the Forest Service from awarding the Bald Mountain timber sale to anyone other than plaintiff, a declaratory determination that the Forest Service acted unlawfully and in breach of contract by canceling the timber sale, and a permanent injunction directing the Forest Service to reinstate the Bald Mountain timber sale and to award the sale to plaintiff as the high bidder. In its pre-trial memorandum, plaintiff abandoned its request for a directed award and sought only an order "directing the Forest Service to reinstate the Bald Mountain timber sale solicitation, reopen the award process from the point where it left off before the illegal cancellation occurred and proceed with the award in an orderly and lawful manner." Pl.'s Pre–Trial Mem. at 55–56; *see also* Pl.'s Post–Trial Proposed Findings of Fact and Conclusions of Law at 45.

After a four-day trial, the court held in its February 6, 1998 opinion that the Forest Service's decision to cancel the Bald Mountain timber sale for the three reasons it specified was arbitrary, capricious, and without rational basis. The court reasoned as follows:

> Erroneous data infected analysis of the proposed Bald Mountain timber sale's effect upon the Late Seral Forest, the Pacific Fisher, and the California Spotted Owl. Although the Forest Service was aware that the data they were using to evaluate the environmental effects of the sale was erroneous, they incorporated the data into their analyses anyway. For some data, the Forest Service attempted to ascertain the degree of error; other times it did not. Whether or not the degree of error was known to the Forest Service, the Forest Service ignored the error in conducting their environmental analyses of the effects of the Bald Mountain timber sale, so long as Forest Service personnel believed that the results of the analyses would lead to a conclusion that overstated the effects of the Bald Mountain timber sale upon the environment.

40 Fed.Cl. at 570. The court concluded that the Forest Service breached its contractual duty to fairly and honestly consider plaintiff's bid by improperly rejecting plaintiff's bid and canceling the timber sale. The court directed the Forest Service "to reinstate the award process to the point where it left off before the illegality occurred. In determining whether to award or cancel the Bald Mountain sale, the Forest Service retains the power to terminate the award process for any legal reason." 40 Fed.Cl. at 571. The court further directed the Forest Service to "make such a determination within 60 days from the date of this opinion and so inform the Court." *Id.*

On April 22, 1998, defendant filed its response to the court's February 6 Order. The Forest Service Response purports to offer a valid alternative reason for canceling the Bald Mountain timber sale. Specifically,

---

low level in the area. The Fisher BE concluded that "harvest of the Bald Mountain Timber Sale is likely to adversely affect fisher. It may, there-fore, contribute to a trend toward Federal listing or loss of viability of the species." Plaintiff's Exhibit 11 at 20.

defendant contends that the timber sale cannot go forward because a March 1998 site-specific stand examination revealed that the Bald Mountain timber sale fails to comply with the specific tree retention requirements of the CASPO interim guidelines. The Forest Service Response explains that only 2,653 MBF of the original 4,830 MBF of the Bald Mountain timber could be harvested under the CASPO interim guidelines, which defendant contends were mandatory for all timber sales on the Eldorado National Forest awarded in 1994 and later. The Forest Service Response advises the court that, given the significant cost and time associated with reconfiguring the timber sale, no timber sale currently is planned for the Bald Mountain area.

## DISCUSSION

The case is presently before the court on Plaintiff's Motion for Judgment. Plaintiff contends that it is entitled to entry of judgment in its favor with an award of costs because the court's February 6, 1998 opinion granted the equitable relief plaintiff requested. Plaintiff argues that the Forest Service should be estopped from arguing non-compliance with the CASPO interim guidelines as an alternative rationale for canceling the Bald Mountain timber sale, and that the new timber data collected during the March 1998 site-specific stand examination does not demonstrate that the timber sale fails to meet the CASPO interim guidelines. Defendant opposes plaintiff's motion for entry of judgment on the grounds that (1) the court lacks jurisdiction to hear plaintiff's motion, (2) the requirements for issuing equitable relief have not been satisfied in this case, and (3) the court's February 6, 1998 order did not, in fact, award equitable relief, but rather remanded to the Forest Service to allow the agency to offer an alternative justification for the cancellation.

Because the court held in its February 6, 1998 opinion that defendant's cancellation of the Bald Mountain timber sale was arbitrary, capricious, and without rational basis, and enjoined the Forest Service from proceeding with cancellation of the sale based on its stated rationale, the court holds that plaintiff is entitled to entry of judgment in its favor with an award of costs. Defendant's current justification for cancellation of the Bald Mountain timber based on noncompliance with the CASPO interim guidelines is independent from the Forest Service's prior cancellation and therefore does not preclude entry of judgment in favor of plaintiff based on the original cancellation. Plaintiff's objections to the Forest Service's current plan to cancel the timber sale are not before the court at this time, as plaintiff's comments on the Forest Service Response do not constitute a formal protest.

## I. Plaintiff's Motion for Entry of Judgment

### A. Jurisdiction

Defendant preliminarily contends that this court lacks jurisdiction to hear plaintiff's motion. According to defendant, plaintiff has withdrawn its request for further relief, which "necessarily moots the existence of any case or controversy." Def.'s Reply to Pl.'s Opp. to Def.'s Mot. for Leave to File Subsequent Supplemental Authority at 3. The court rejects this argument. Nothing in the record indicates that plaintiff has abandoned its request for further relief as defendant suggests. Rather, plaintiff continues to argue that it is entitled to award of the Bald Mountain timber sale. See, e.g., Plaintiff's Motion for Judgment at 9 ("[P]laintiff submits that it is arbitrary and capricious for the Forest Service to continue to refuse to award this sale to Wetsel–Oviatt."). Moreover, any indication to the contrary that plaintiff might have given in the context of status or settlement conferences is not germane to the court's consideration of this motion. See generally Fed.R.Evid. 408 ("Evidence of conduct or statements made in compromise negotiations is ... not admissible."). The court therefore has jurisdiction to consider plaintiff's motion for entry of judgment.

### B. Requirements for Equitable Relief Are Satisfied

Defendant contends that plaintiff is not entitled to entry of judgment because the requirements for equitable relief have not been satisfied in this case. According to defendant, an injunction could not have been

issued by the court in its February 6, 1998 Order because plaintiff failed to demonstrate that the timber sale cancellation would cause it to suffer irreparable harm, that the harm would outweigh any harm to the United States, and that an injunction would serve the public interest. The court disagrees.

■ This court's power to enjoin the improper cancellation of a solicitation is well settled. *See Parcel 49C Ltd. Partnership v. United States,* 31 F.3d 1147, 1152–54 (Fed. Cir.1994); *see also 126 Northpoint Plaza Ltd. Partnership v. United States,* 34 Fed.Cl. 105, 107 (1995). To warrant injunctive relief, the movant must demonstrate, by clear and convincing evidence, that either: (1) the agency lacked a rational or reasonable basis for its cancellation decision; or (2) the procurement involved a clear and prejudicial violation of applicable statutes and regulations. *See 126 Northpoint Plaza,* 34 Fed.Cl. at 107; *Logicon, Inc. v. United States,* 22 Cl.Ct. 776, 782 (1991); *CACI Field Servs., Inc. v. United States,* 13 Cl.Ct. 718, 725 (1987), *aff'd* 854 F.2d 464 (Fed.Cir.1988). Additionally, injunctive relief is appropriate only where the plaintiff can demonstrate that it will suffer irreparable harm, that the harm to plaintiff outweighs the harm to the government, and that the award of injunctive relief is in the public interest. *See FMC Corp. v. United States,* 3 F.3d 424, 427 (Fed. Cir.1993); *ATA Defense Indus., Inc. v. United States,* 38 Fed.Cl. 489, 505 & n. 10 (1997).

The court's February 6, 1998 opinion demonstrates that plaintiff met the standards for receiving equitable relief in this case. There can be little doubt from the court's prior opinion that the Forest Service lacked a rational basis in canceling the Bald Mountain timber sale. After a detailed discussion of the Forest Service's rationales for canceling the sale, in which the court identified environmental analyses plagued by unwarranted assumptions and erroneous data, the court stated unequivocally that "[i]n sum, the Forest Service did not have a rational basis for canceling the Bald Mountain timber sale." 40 Fed.Cl. at 570. The court went on to reiterate that "the Forest Service's cancellation of the Bald Mountain timber sale was arbitrary, capricious and without rational basis, and ... the Forest Service, therefore, breached its contractual obligation to fairly and honestly consider Wetsel's bid on that sale." *Id.* at 571. The underlying support for the court's finding is presented in the court's February 6 opinion and need not be restated here. More importantly, defendant has taken no issue with the court's finding on this score.

■ To the extent that the court did not explicitly address in its prior opinion the three additional showings needed to justify the issuance of equitable relief, the court does so now. First, defendant's failure to fairly and honestly consider plaintiff's submission denied plaintiff the opportunity to compete for the Bald Mountain timber sale and secure any resulting profits. Courts have routinely found that such conduct constitutes irreparable harm. *See, e.g., United Int'l Investigative Servs., Inc. v. United States,* 41 Fed.Cl. 312, 323 (1998); *PCI/RCI v. United States,* 36 Fed.Cl. 761, 776 (1996); *TRW Envtl. Safety Sys., Inc. v. United States,* 18 Cl.Ct. 33, 72–73 (1989); *Quality Transp. Servs., Inc. v. United States,* 12 Cl. Ct. 276, 282 (1987). Moreover, harm to a plaintiff is irreparable where, as here, an action at law for damages would not make the plaintiff whole. *See Parcel 49C v. United States,* 1994 WL 585905, at *2 (Fed.Cl. March 14, 1994) (citing *Essex Electro Eng'rs, Inc. v. United States,* 3 Cl.Ct. 277, 287 (1983)), *aff'd* 31 F.3d 1147 (Fed.Cir.1994); *TRW Envtl. Safety Sys.,* 18 Cl.Ct. at 73. Second, where the federal procurement process is tainted by arbitrary and capricious government action, the public interest is served by restoring integrity to the procurement process. *See United Int'l Investigative Servs.,* 41 Fed.Cl. at 323; *Day & Zimmermann Servs. v. United States,* 38 Fed.Cl. 591, 610 (1997); *PCI/RCI,* 36 Fed.Cl. at 776; *Parcel 49C,* 31 F.3d at 1154. In this case, requiring the Forest Service to comply with its statutory and contractual obligations to treat plaintiff, and all other offerors, fairly and honestly is a means to restoring integrity to the procurement system. Third, the balance of hardship tips in favor of the plaintiff where, as here, the government fails to articulate any harm that it will endure if the

injunction is granted. *See Parcel 49C,* 31 F.3d at 1154; *126 Northpoint Plaza,* 34 Fed. Cl. at 112. The injunction requires only that the Forest Service do what it ought to have done all along—namely, consider all submissions for the Bald Mountain timber sale fairly and honestly, or, if necessary, justify any prospective cancellation with a rational basis. *See Day & Zimmermann Servs.,* 38 Fed.Cl. at 610–11; *126 Northpoint Plaza,* 34 Fed.Cl. at 112. Based on the court's February 6, 1998 findings and these additional considerations, the court is well satisfied that all the requirements for the award of equitable relief have been met in this case.

## C. The Court Awarded Equitable Relief

Defendant next contends that, regardless of whether the requirements for equitable relief have been satisfied, the court's February 6 Order did not, in fact, award plaintiff equitable relief. Defendant characterizes the court's Order as a remand order, which, according to defendant, "simply afforded the Government with the opportunity to demonstrate that the contracting officer's decision to cancel the sale was correct, albeit on different grounds than those initially set forth." Def.'s Reply to Pl.'s Opp. to Def.'s Mot. for Leave to File Subsequent Supplemental Authority at 2. Defendant concludes that plaintiff is not entitled to entry of judgment in its favor because the February 6 Order constituted merely an "interlocutory order remanding a matter to the agency" and was not "an appealable order actually granting equitable relief." *Id.* at 2–3.

The court finds that defendant has misconstrued the actual relief ordered by the court's February 6 Order, which did, in fact, grant plaintiff equitable relief to redress defendant's improper cancellation of the Bald Mountain timber sale. Although defendant argues, based on its March 1998 site-specific stand examination, that the Bald Mountain timber sale would need to be reconfigured and re-advertised before proceeding, defendant's argument is pertinent only to the issue of whether the timber sale should go forward *at the present juncture,* and in no way alters the court's prior finding that defendant's original cancellation lacked a rational basis or

negates the court's prior award of equitable relief. Defendant's alternative justification for canceling the timber sale, therefore, does not preclude entry of judgment in plaintiff's favor based on the court's February 6 Order.

The relief granted by the court in its February 6 Order mirrors the relief granted in *Parcel 49C Ltd. Partnership v. United States,* 31 F.3d 1147 (Fed.Cir.1994). Like the present case, *Parcel 49C* concerned a pre-award bid protest action stemming from the cancellation of a solicitation after the low bidder had been identified. There, the Federal Communications Commission canceled a procurement for federal office space, after the low bidder had been identified, relying on changes in the agency's space needs. *Id.* at 1149. The Court of Federal Claims found that the FCC had intentionally scuttled the procurement and that its justification for the cancellation of the procurement was pretextual. *Id.* at 1149, 1151. The court held that the government's cancellation of the solicitation constituted an abuse of discretion and ordered the government to proceed with award of the solicitation. *See id.* at 1149–50. In upholding the court's award of relief, the Federal Circuit fully recognized the award's equitable nature and reasoned that such relief was warranted under the circumstances:

> [T]he trial court properly enjoined the illegal action and returned the contract award process to the status quo ante any illegality.... The court's order merely restores the posture of the process before the illegal cancellation.... The process will commence from where it left off with the contract award flowing from an orderly and lawful proceeding. The Court of Federal Claims' injunction has the effect of returning [the solicitation] to its pre-cancellation posture and removing the illegal taint.

*Id.* at 1153; *see also 126 Northpoint Plaza,* 34 Fed.Cl. at 111–12 (finding government in breach of its implied duty to fairly and honestly consider all bids and enjoining cancellation of solicitation). No meaningful distinction exists between the relief granted in *Parcel 49C* and the relief granted to plaintiff in the present case. This fact should come as no surprise given that this court relied heavily on and cited repeatedly to *Parcel*

*49C* in fashioning the relief granted in its February 6 Order.

Contrary to defendant's assertion, the court's Order did not constitute a remand in the traditional sense and was not intended to "simply afford[ ] the Government with the opportunity to demonstrate that the contracting officer's decision to cancel the sale was correct, albeit on different grounds than those initially set forth." Def.'s Reply to Pl.'s Opp. to Def.'s Mot. for Leave to File Subsequent Supplemental Authority at 2. Rather, the court returned the solicitation to the Forest Service so that the agency could proceed with the timber sale from where it left off. To order the sale forward without leaving defendant the opportunity to cancel the sale on an independent, valid ground as it proceeded likely would have violated this court's duty to exercise its equitable powers "in a way which best limits judicial interference in contract procurement." *United States v. John C. Grimberg Co.,* 702 F.2d 1362, 1372 (Fed.Cir.1983); *accord Parcel 49C,* 31 F.3d at 1153. Thus, the current posture of this case, and the only issue that was to be addressed by the Forest Service Response, concerns whether, *at the present juncture,* the Bald Mountain timber sale should proceed or be canceled for a legal reason that *currently* prevents the sale from going forward. Although the court's February 6 Order provided that defendant "retains the power to terminate the award process for any legal reason," and stated that defendant was to notify the court within 60 days if any such legal reason existed, 40 Fed.Cl. at 571, those provisions do not transform the court's valid award of equitable relief into a second opportunity for defendant to prove that its original cancellation was justified.

### D. Effect of the Forest Service's New Justification on the Court's February 6, 1998 Order

Defendant contends that its current justification for cancellation of the Bald Mountain timber sale precludes entry of judgment in plaintiff's favor. Defendant relies on *College Point Boat Corp. v. United States,* 267 U.S. 12, 15–16, 45 S.Ct. 199, 69 L.Ed. 490 (1925), and *Reservation Ranch v. United States,* 39 Fed.Cl. 696, 719 (1997), to support its position that the timber sale's non-compliance with the CASPO interim guidelines precludes entry of judgment in plaintiff's favor based on the court's February 6 Order. In *Reservation Ranch,* the court explained that "where the government has canceled a contract based upon erroneous grounds, the cancellation may be sustained if there existed an adequate ground for cancellation at the time of cancellation, even if the ground was not then known." *Reservation Ranch,* 39 Fed. Cl. at 719 (citing *College Point Boat Corp.,* 267 U.S. at 15–16, 45 S.Ct. 199).

Although the court agrees with this rule of law, generally, the rule does not extend to the instant situation, in which defendant waited until after the court had presided over a full trial on the merits and issued an opinion before defendant raised its alternative ground for cancellation of the timber sale. Given that the CASPO interim guidelines were adopted on January 13, 1993 and that the Bald Mountain timber sale was not canceled until February 24, 1994, defendant's current justification was available to defendant at the time of trial. Moreover, Forest Supervisor Phipps testified at trial that he received copies of the CASPO report and interim guidelines when they were issued, that he was familiar with the interim guideline tree retention requirements, and that "[t]he only alternative to coming up with something like [the disturbance index methodology] ... was to implement the interim guidelines that would—would automatically mean all these sales would have to be radically changed to a CASPO prescription from clear cutting." *See* Trial Trans. at 611. Thus, although Forest Supervisor Phipps knew of the specific tree retention requirements under the CASPO harvest prescription, defendant never raised at trial the timber sale's non-compliance with those requirements as a justification for canceling the sale. Instead, the Forest Service argued only that the disturbance index methodology, which was not prescribed by the CASPO report or interim guidelines, would preclude future management options for the owl. That the Forest Service chose to justify its cancellation of the Bald Mountain timber sale with the disturbance index data,

rather than with other available justifications, precludes defendant from rearguing the legality of the 1994 cancellation based on those other justifications at this time. *See Weaver–Bailey Contractors, Inc. v. United States,* 20 Cl.Ct. 158, 160 (1990) (explaining that the need for finality following trial dictates that "litigation must come to an end some time"); *accord Roflan Co. v. United States,* 230 Ct.Cl. 971, 973 (1982); *Technical Dev. Corp. v. United States,* 202 Ct.Cl. 237, 243–44 (1973).

Nor is the court persuaded by defendant's argument that the court's April 1, 1997 order limiting the scope of trial precluded defendant from arguing at trial the timber sale's noncompliance with the CASPO interim guidelines. The court's April 1, 1997 order sought to prevent the parties from presenting "data compiled *after* the contracting officer made his decision to cancel the proposed sale." April 1, 1997 Order at 2. The order specifically called for "information available to the government *at the time* it made the decision to cancel the proposed sale," including "evidence of information that the government was required to consider—or should have considered—at the time of the cancellation." *Id.* As evidenced by the trial testimony of Forest Supervisor Phipps, the Forest Service was familiar with the specific tree retention requirements of the CASPO interim guidelines at the time of the cancellation. If defendant believed that failure to proceed with the Bald Mountain timber sale under the CASPO harvest prescription justified cancellation of the Bald Mountain timber sale, as defendant now asserts, then defendant was free to assert that argument at trial. Although defendant correctly points out that plaintiff raised an objection during trial in response to a general discussion of the CASPO interim guidelines by one of defendant's witnesses, the court did not, as defendant suggests, sustain plaintiff's objection or otherwise preclude defendant from arguing that the Bald Mountain timber sale had been canceled due to non-compliance with the CASPO interim guidelines. Instead, the court expressly stated that it would "permit the testimony" and would "weigh it according to [plaintiff's] objections." Trial Trans. at 693. The court therefore holds that the Bald Mountain timber sale's failure to comply with the tree retention requirements of the CASPO interim guidelines cannot now be raised to validate defendant's 1994 cancellation decision.

The court's February 6, 1998 order consisted of a declaratory judgment that defendant's cancellation of the Bald Mountain timber sale was arbitrary, capricious, and without a rational basis, and injunctive relief enjoining defendant's cancellation of the timber sale. *See* 40 Fed.Cl. at 570–71. Because the equitable relief granted by the court was the relief requested by plaintiff in this action, plaintiff is entitled to judgment in its favor with an award of costs based on the court's February 6, 1998 opinion. Entry of judgment in favor of plaintiff based on reinstatement of the solicitation is consistent with the dispositions of similar cases. *See, e.g., Parcel 49C,* 31 F.3d at 1154 (affirming in relevant part trial court's entry of judgment based on reinstatement of solicitation); *126 Northpoint Plaza,* 34 Fed.Cl. at 112 (entering judgment based on reinstatement of solicitation). The court's February 6, 1998 decision granting plaintiff equitable relief therefore stands.

## II. Comments on the Forest Service's Response to the Court's February 6, 1998 Order

Defendant advises the court in the Forest Service Response that, based on its March 1998 site-specific stand examination, the Bald Mountain timber sale will not proceed at the current time because a large portion of the sale area would need to be reconfigured to comply with the tree retention requirements of the CASPO interim guidelines. Pursuant to the site-specific stand examination, defendant contends that a maximum of only 2,653 MBF of the estimated 4,830 MBF stated in the 1992 Timber Sale Prospectus for the Bald Mountain timber sale would be salable under the CASPO interim guidelines. Because the new sale would be significantly different from the original Bald Mountain timber sale, defendant contends that the new sale would need to be re-advertised in order to comply with NFMA. Defendant further contends that to advertise the new sale, in

turn, would require the Forest Service to conduct an entirely new environmental assessment or environmental impact statement, costing over $200,000 and spanning at least one to two years. Defendant advises the court that, given these considerations, it does not intend at the present time to go forward with the Bald Mountain timber sale.

Although the court is unwilling to reconsider the reasonableness of the Forest Service's 1994 cancellation of the timber sale based on the post-trial, alternative justification that the timber sale fails to comply with the CASPO interim guidelines, defendant is not precluded from raising the results of its March 1998 site-specific stand examination as a current justification for not going forward with the Bald Mountain timber sale. As the court explained *supra,* the court's order of February 6 contemplated such *prospective* evaluations of the Bald Mountain timber sale. The court's prior injunctive relief "reinstate[d] the award process to the point where it left off," and did not intend to preclude the Forest Service from exercising its "power to terminate the award process for any legal reason" as it moved forward from that point. *Wetsel–Oviatt Lumber Co.,* 40 Fed.Cl. at 571.

In its comments on the Forest Service Response, plaintiff disputes that the CASPO interim guidelines are applicable to the Bald Mountain timber sale. Even assuming the CASPO interim guidelines apply to the Bald Mountain timber sale, plaintiff further argues that the conclusions drawn by defendant from the 1998 site-specific stand examination data are invalid and notes that it has not yet had an opportunity to verify the data collected. While the court finds that plaintiff is entitled to challenge the legality of the Forest Service's new decision to cancel the timber sale, just as it challenged the legality of the Forest Service's prior cancellation, such a challenge would constitute a new protest separate and distinct from the subject of the court's 1998 opinion. Plaintiff's comments in its current motion are not sufficient to raise such a challenge. If plaintiff wishes to pursue its concerns regarding the legality of the Forest Service's current cancellation, plaintiff should file a formal protest to that effect, pursuant to 28 U.S.C. § 1491.

## CONCLUSION

Defendant's original cancellation of the Bald Mountain timber sale was arbitrary, capricious, and without a rational basis, and was consequently enjoined in the court's February 6, 1998 Order. Plaintiff's motion for entry of judgment on its 1994 protest is granted, and the Clerk shall enter judgment in favor of plaintiff. Costs for the plaintiff.

Any challenge to the Forest Service's current intention to cancel the Bald Mountain timber sale, as announced in the Forest Service Response, should be brought pursuant to a formal protest before it will be considered by the court. No ruling is made, therefore, on plaintiff's comments on the Forest Service Response.