**Michael A. HERNANDEZ,**
**pro se, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 10–135C.**

United States Court of Federal Claims.

June 22, 2010.

Michael A. Hernandez, Tecumseh, NE, pro se.

Carrie A. Dunsmore, Washington, DC, with whom was Assistant Attorney General Tony West, for defendant.

## MEMORANDUM OPINION AND ORDER

MILLER, Judge.

Plaintiff, appearing *pro se,* filed a complaint in the United States Court of Federal Claims on May 13, 2010, alleging, *inter alia,* that participants in his criminal conviction, ranging from witnesses to appellate judges, conspired to commit racial hate crimes. On April 30, 2010, defendant moved for summary dismissal pursuant to RCFC 12(b)(1), arguing that plaintiff failed to state a claim within the jurisdiction of the court. Plaintiff filed his response on May 12, 2010, along with a motion for leave to amend his complaint—the latter returned unfiled by Order entered on May 17, 2010, for failure to attach the Amended Complaint. *See* Order entered on May 21, 2010, ¶ 1. An Amended Complaint with a memorandum in support was filed on May 18, 2010. Defendant on May 19, 2010, moved for an extension of time to answer or otherwise respond because the Government had not received the Amended Complaint as of that date. The court's staff forwarded defense counsel a copy, and the May 21, 2010 Order granted an extension to June 30, 2010.

Because this superceding complaint is almost identical to the original, other than added exposition and reorganization, the court determines that the interests of justice are served by addressing jurisdiction *sua sponte, see Arbaugh v. Y & H Corp.,* 546 U.S. 500, 502, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (ruling that complaint must be dismissed *sua sponte* when federal court lacks jurisdiction); *Folden v. United States,* 379 F.3d 1344, 1354 (Fed.Cir.2004) (same), and without further briefing, *see* RCFC 7.2(a)(1) (stating that court may determine whether further briefing is required by order).

Plaintiff alleges that various members of the Nebraska justice system conspired to, among other acts, discriminate, obstruct, and impede the administration of justice in violation of the Civil Rights Act of 1964, 42 U.S.C. §§ 1983, 1985–1986 (2006); the "Bad Men" clause of the Fort Laramie Treaty of 1868, art. 1, Apr. 29, 1868, 15 Stat. 635 (the "Fort Laramie Treaty"); and the U.S. Constitution.

## BACKGROUND

Michael A. Hernandez ("plaintiff"), currently incarcerated in Tecumseh State Correctional Facility in Nebraska, has filed this suit while serving his sentence. Plaintiff alleges that state officials engaged in invidious racial discrimination against him because he is a member of the Rosebud Sioux Indian Tribe.[1] Specifically, plaintiff alleges that perjured testimony was used at his trial after Western Intelligence Narcotics Group ("WING") Officer Ken Hart bribed a witness. According to plaintiff, Box Butte County District Court Judge Brian Silverman neglected his judicial duties when he refused to recuse himself despite working in a courthouse located on what plaintiff claims is stolen Sioux property. Plaintiff also charges that the Box Butte County Attorneys' Office committed prosecutorial misconduct, witnesses committed misconduct, judges committed judicial misconduct, and his court-appointed trial and appellate counsel ineffectively represented his interests in court.

Plaintiff contends that he attempted to bring this suit in the United States District Court for the District of Nebraska, but was "denied the right to bring the wrongdoers to trial." Pl.'s Br. filed May 12, 2010, ¶ 34. However, plaintiff concedes that the United States District Court for the District of Nebraska lacked jurisdiction. Pl.'s Br. ¶ 21.

## DISCUSSION

1. *Standard of review*

■ Jurisdiction must be established before the court may proceed to the merits of a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88–89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). "Subject-matter jurisdiction may be challenged at any time by the parties or by the court *sua sponte*." *Folden*, 379 F.3d at 1354. In deciding whether subject matter jurisdiction is present, the allegations stated in the complaint are taken as true and jurisdiction is decided on the face of the pleadings. *Shearin v. United States*, 992 F.2d 1195, 1195–96 (Fed.Cir.1993). However, complaints filed by *pro se* litigants are held "to less stringent standards than formal

pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). Despite warranting a less exacting standard, *pro se* status does not relieve a *pro se* plaintiff from meeting jurisdictional requirements. *See Sanders v. United States*, 252 F.3d 1329, 1336 (Fed.Cir. 2001) (affirming *sua sponte* dismissal of *pro se* breach of contract complaint for lack of jurisdiction). The requirements of subject matter jurisdiction are exacting, so "a party's failure or inability to procure counsel therefore does not alter who carries the burden nor how that burden is met." *Carter v. United States*, 62 Fed.Cl. 66, 69 (2004). As it is obvious that this complaint raises serious questions about the court's jurisdiction to hear this case, the court reviews plaintiff's complaint to ensure that jurisdiction has been established.

■ The Tucker Act, 28 U.S.C. § 1491 (2006), "confers jurisdiction upon the Court of Federal Claims over the specified categories of actions brought against the United States, and ... it waives the Government's sovereign immunity for those actions," *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed.Cir.2005) (en banc). Consequently, the Tucker Act must be construed strictly in favor of the Government. *See Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 261, 119 S.Ct. 687, 142 L.Ed.2d 718 (1999); *see also Shoshone Indian Tribe v. United States*, 364 F.3d 1339, 1346 (Fed.Cir.2004) (discussing statutes of limitations). Under the Tucker Act, the court is authorized to "render judgment upon any claim *against the United States* founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages *in cases not sounding in tort*." 28 U.S.C. § 1491(a)(1) (emphasis added). This jurisdiction extends only to claims for money damages. *See United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). "[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act...."

---

1. Plaintiff is a registered member of the Rosebud Sioux Tribe, Enrollment No. 345U021853.

**197**

*Todd v. United States,* 386 F.3d 1091, 1094 (Fed.Cir.2004).

### 2. *Plaintiff's claims*

Plaintiff puts forth five arguments to support jurisdiction in the Court of Federal Claims over the claims at bar. First, according to plaintiff, the Amended Complaint pleads a money-mandating claim not grounded in tort, and "the Plaintiff had to raise tort sounding issues to prove that U.S. Dist. Court Judges Kopf and Bataillon breached their fiduciary duties to protect Plaintiff's [Fort Laramie Treaty] Rights." Am. Compl. filed May 18, 2010, ¶ 4; Pl.'s Br. filed May 12, 2010, ¶ 3. Second, plaintiff asserts that the Court of Federal Claims has jurisdiction over his cause of action because he alleges that the Government violated his rights under the Civil Rights Act of 1964, 42 U.S.C. § 1983 (2006) (civil action for deprivation of rights), 42 U.S.C. § 1985 (2006) (conspiracy to interfere with civil rights), and 42 U.S.C. § 1986 (2006) (action for neglect to prevent civil rights violations), and "the Civil Rights Act of 1986."[2] *See* Pl.'s Br. at 1–4; Am. Compl. ¶ 168. Third, plaintiff avers that allegations of various constitutional violations render Tucker Act jurisdiction appropriate. *See, e.g.,* Am. Compl. ¶ 94 (First Amendment); Am. Compl. ¶ 58 (Fifth Amendment); Am. Compl. ¶ 49 (Sixth Amendment); Am. Compl. ¶ 67 (Fourteenth Amendment). Fourth, plaintiff argues that the Court of Federal Claims has jurisdiction based on an alleged breach of contract. Am. Compl. ¶ 95 ("The fact that the Box Butte Co. Courthouse sits on stolen unceded Sioux Indian Land is a breach of contract [under the Fort Laramie Treaty]."). Finally, plaintiff argues that the Tucker Act countenances his cause of action arising under the "Bad Men" clause of the Fort Laramie Treaty. The court addresses each argument in turn.

Although plaintiff's case is captioned as a suit against the United States, plaintiff actually raises allegations against the State of Nebraska Courts of Justice; Box Butte County District Court Judge Brian Silverman; the Box Butte County Attorney's Office; Court–Appointed Counsel Dave Eubanks, Len Tabor, and Paul Wess; the Box Butte County Sheriff's Office; the Alliance Police Department; Officer Ken Hart; WING; the State of Nebraska; the Nebraska Attorney General's Office; the United States District Court of Nebraska [sic]; and United States District Court of Nebraska Judges Kopf and Bataillon. The Tucker Act limits the court's power to claims against the United States. Because the court's reach extends to agencies of the United States, only the final named party, "the United States District Court of Nebraska," qualifies as an agency of the United States. *See Emery Worldwide Airlines, Inc. v. United States,* 264 F.3d 1071, 1080 (Fed.Cir.2001) (applying definition of agency from 28 U.S.C. § 451 (2006), to 28 U.S.C. § 1491, because both statutes are within Title 28); *Porter v. United States,* 204 Ct.Cl. 355, 496 F.2d 583, 589 (1974) ("[N]one of the territorial governments, including the Government of the Trust Territory, are regarded as Federal agencies or instrumentalities." (internal quotation marks omitted)).[3] Thus, the only entity that properly may be named as a party defendant and sued in the Court of Federal Claims—assuming that the claims against this party come within the court's jurisdiction—is the United States District Court for the District of Nebraska.

The Court of Federal Claims regularly exercises jurisdiction over claims arising under the Takings Clause of the Fifth Amendment to the U.S. Constitution, but plaintiff's claims are tort claims, not claims under the Takings Clause. U.S. Const. amend. V. The court also possesses jurisdiction to entertain monetary claims against the

---

2. If plaintiff is citing 42 U.S.C. § 2000e (2006), as "the Civil Rights Act of 1986," this does not provide jurisdiction. It is also possible that plaintiff was attempting to cite the Indian Civil Rights Act of 1986, 25 U.S.C. §§ 1301–03 (2006), which also would not provide jurisdiction.

3. "The term 'agency' includes any department, independent establishment, commission, administration, authority, board or bureau of the United States or any corporation in which the United States has a proprietary interest, unless context shows that such term was intended to be used in a more limited sense." 28 U.S.C. § 451.

United States; this jurisdiction, however, does not extend to claims sounding in tort for civil wrongs committed by the United States or its agents. *See* 28 U.S.C. § 1491(a)(1); *see also Brown v. United States,* 105 F.3d 621, 623 (Fed.Cir.1997) ("The Court of Federal Claims lacks jurisdiction ... over tort actions against the United States.").

Plaintiff alleges that the Box Butte County Court "sits on stolen and unceded Sioux Indian Land," Am. Compl. ¶ 17, but he does not seek redress for this taking. Instead, plaintiff alleges that racial hate crimes occurred in this courthouse, *see* Pl.'s Br. ¶ 27, and thus his claim states a strictly tortious allegation, *see O'Connor v. United States,* 355 Fed. Appx. 412, 412–13 (Fed.Cir.2009) (affirming dismissal of claims of negligence because claims sound in tort); *New Am. Shipbuilders, Inc. v. United States,* 871 F.2d 1077 (Fed.Cir.1989) (dismissing claims of misconduct).

██ Next, plaintiff avers that his cause of action arises under the Civil Rights Act of 1964, 42 U.S.C. §§ 1983, 1985–1986, and is properly before the court. The court does not have jurisdiction over claims arising under the Civil Rights Act, as jurisdiction over such claims resides exclusively in the federal district courts. *See Gant v. United States,* 63 Fed.Cl. 311, 316 (2004) (citing *Rogers v. United States,* 14 Cl.Ct. 39, 50 (1987), *aff'd,* 861 F.2d 729, 1988 WL 99131 (Fed.Cir.1988) (table)); *Anderson v. United States,* 22 Cl.Ct. 178, 179 n. 2 (1990), *aff'd,* 937 F.2d 623, 1991 WL 100830 (Fed.Cir.1991) (table).[4]

██ Similarly, plaintiff argues that his constitutional claims are proper under the Tucker Act. Regardless of the legal authority underlying plaintiff's claims, whether it be the U.S. Constitution, a statute, or a regulation, the claims must be based on a money-mandating provision in order to create a cause of action for money damages for the purpose of § 1491 jurisdiction. *See Testan,* 424 U.S. at 400, 96 S.Ct. 948. Plaintiff avers that his rights under the First, Fourth, Fifth, Sixth, Seventh, Eight, Ninth, Fourteenth,

and Fifteenth Amendments were violated. None of these claims allege a violation for which money damages are mandated. The United States Court of Appeals for the Federal Circuit has held expressly that the Court of Federal Claims does not have jurisdiction over claims arising under the Sixth Amendment, the Fifth Amendment Due Process Clause, or the Fifth and Fourteenth Amendment Equal Protection Clauses because they do not mandate the payment of money. *See Crocker v. United States,* 125 F.3d 1475, 1476 (Fed.Cir.1997) (Due Process); *LeBlanc v. United States,* 50 F.3d 1025, 1028 (Fed.Cir. 1995) (Equal Protection); *Milas v. United States,* 42 Fed.Cl. 704, 710 (1999) (Sixth Amendment); *see also Webster v. United States,* 74 Fed.Cl. 439, 444 (2006) (Seventh Amendment); *Featheringill v. United States,* 217 Ct.Cl. 24, 32–33 (1978) (First Amendment). Plaintiff's remaining constitutional claims under the Fourth, Eighth, Ninth, and Fifteenth Amendments similarly do not support jurisdiction.

██ Third, plaintiff argues that his claims encompass a breach of contract by the United States Department of Justice, thus warranting jurisdiction in the Court of Federal Claims. Plaintiff alleges that the Department of Justice "failed to arrest suspected 'wrongdoers,'" as were listed in plaintiff's original complaint, thus breaching the "Bad Men" clause of the Fort Laramie Treaty. Pl.'s Br. ¶ 4. Plaintiff focuses on language in the "Bad Men" clause which states: "[T]he United States will, upon proof made to the agent and forwarded to the Commissioner of Indian Affairs at Washington city, proceed at once to cause the offender to be arrested and punished according to the laws of the United States...." Fort Laramie Treaty art 1. The Court of Federal Claims' jurisdiction over breaches of contracts to which the United States, or an agency thereof, is a party is dependent upon evidence of privity of contract. *United States v. Johnson Controls, Inc.,* 713 F.2d 1541, 1550–51 (Fed.Cir.1983) (discussing jurisdictional requirements of privity). No privity is alleged, nor is there

---

**4.** *Zhengxing v. United States,* 204 Fed.Appx. 885, 887 (Fed.Cir.2006), a nonprecedential decision, affirmed the dismissal of claims, including a vio-

lation of the Civil Rights Act of 1964, for lack of jurisdiction.

any evidence of an existing contract between the United States and plaintiff. Plaintiff does not allege that he is a party, even impliedly, to any contracts with the Department of Justice or with any other agency of the United States. Therefore, jurisdiction has not been established over plaintiff's claims that attempt to plead a breach of contract.

■■■ Finally, plaintiff asserts that the "Bad Men" clause creates a third-party contractual right to sue the United States directly. *See Ex parte Kan-gi-shun-ca,* 109 U.S. 556, 567–68, 3 S.Ct. 396, 27 L.Ed. 1030 (1883); *Garreaux v. United States,* 77 Fed. Cl. 726, 735–37 (2007). However, in order to constitute a cause of action under this provision, "bad men" must have "committed a wrong" within the sense of the treaty. *See Kan-gi-shun-ca,* 109 U.S. at 567–68, 3 S.Ct. 396. The wrong must be committed by a non-Native American against a Native American, or vice-versa, and a "wrongful act" must be alleged in order for the wrongdoer to be subject to the "Bad Men" clause. *See id.* The term "wrongful act" was not defined explicitly by the Fort Laramie Treaty or in judicial decisions, so the court must seek to determine what the parties to the Fort Laramie Treaty intended this term to mean. *See id.; see also Nw. Bands of Shoshone Indians v. United States,* 324 U.S. 335, 337–38, 65 S.Ct. 690, 89 L.Ed. 985 (1945). In making this determination, the court must construe discrepancies in favor of the Native Americans without extending the treaty beyond its bounds in order to meet varying alleged injustices. *See Nw. Bands of Shoshone Indians,* 324 U.S. at 337–38, 65 S.Ct. 690 (holding that treaty allowing for safe passage, but not explicitly acknowledging Native American title or right of occupancy, through certain lands did not constitute acknowledgment by United States of Native American title to such lands).

■■■ The Fort Laramie Treaty provides, in relevant part: "If bad men among the whites, or among other people subject to the authority of the United States, shall commit any wrong upon the person or property of the Indians, the United States will ... reimburse the injured person for the loss sustained." Fort Laramie Treaty art. 1. The primary intent of this clause was to keep the peace between Native Americans and non-Native Americans, and, as such, the Fort Laramie Treaty has been applied to affirmative criminal acts and not mere acts of negligence. *See Kan-gi-shun-ca,* 109 U.S. at 567, 3 S.Ct. 396 (holding criminal acts between Native Americans to be outside intended scope of Fort Laramie Treaty); *Janis v. United States,* 32 Ct.Cl. 407, 409 (1897) ("The general purpose of the Indian indemnity acts, as has been said frequently, was to keep peace.").[5] Plaintiff makes many claims that might result in criminal punishment, but alleges no acts that would have threatened the peace that the Fort Laramie Treaty was intended to protect. *See Kan-gi-shun-ca,* 109 U.S. at 567, 3 S.Ct. 396. If the court were to extend the "Bad Men" clause to plaintiff's claims, it would improperly extend the clause beyond its intended bounds.

Even if plaintiff's claims were considered wrongful acts under the "Bad Men" clause, defendant argues that the parties being sued do not qualify as "bad men" for purposes of the Fort Laramie Treaty. Defendant contends that the United States District Court for the District of Nebraska, as an agency, cannot qualify as a "bad man" for the purposes of the treaty because the court is not a specified white man. Def.'s Br. filed Apr. 30, 2010, at 5–6 (citing *Garreaux,* 77 Fed.Cl. at 737). While defendant acknowledges that Officer Hart allegedly uses federal monies, defendant notes that plaintiff did not identify Officer Hart as a federal employee. *See id.* at 6 n. 5. Plaintiff responds that WING is federally funded, and Officer Hart therefore should be considered a federal agent, capable of qualifying as a "bad man" for purposes of the Fort Laramie Treaty. Pl.'s Br. ¶ 6.

---

**5.** Plaintiff asserts eleven different acts that he alleges to be "affirmative criminal acts," *see* Pl.'s Br. ¶ 27, but these acts are not supported by sufficient facts, nor can any one of them be considered a crime of moral turpitude that the "Bad Men" clause purports to cover, *see, e.g.,* *Kan-gi-shun-ca,* 109 U.S. at 567, 3 S.Ct. 396 (considering murder a "wrongful act"); *Elk v. United States;* 70 Fed.Cl. 405, 405–06 (2006) (sexual assault). *But see Hebah v. United States,* 192 Ct.Cl. 785, 428 F.2d 1334, 1338 (1970) (finding jurisdiction over action for wrongful death).

 In order to bring action under the Fort Laramie Treaty a Native American must be a victim of an affirmative criminal act, and the person committing the act must be a specific white man or men. *See Kan-gi-shun-ca,* 109 U.S. at 567, 3 S.Ct. 396. A court, however, is not a specific white man, and may not qualify as a "bad man" for the purposes of this treaty without extending the Fort Laramie Treaty beyond its intended bounds.[6] The court thus cannot assert jurisdiction over plaintiff's claims against the United States District Court for the District of Nebraska.[7] Moreover, although plaintiff correctly asserts that WING is federally funded, WING fails to qualify as a federal agency. The United States must have a proprietary interest in the agency, not merely grant it funds. *See G–Lam Corp. v. United States,* 227 Ct.Cl. 764, 764 (1981) ("It is clear ... that no agency relationship is created between the United States and state or local governments through the grant of federal funds to such entities."); *D.R. Smalley & Sons, Inc. v. United States,* 178 Ct.Cl. 593, 372 F.2d 505, 507 (1967) (finding federal grants insufficient to warrant agency relationship, regardless of accompanying performance standards). WING may be federally funded, but the Amended Complaint does not allege that the United States has a say in the internal operations of the agency. Even if Officer Hart committed a wrongful act, as to which plaintiff has not alleged sufficient facts, Officer Hart is not an agent of the United States, and thus the Court of Federal Claims may not assert jurisdiction over plaintiff's claims under the "Bad Men" clause.

The court has scoured the Amended Complaint for a basis of jurisdiction. The court has analyzed each and every citation or authority put forth in the Amended Complaint in an attempt to establish jurisdiction. Having found none, the court must dismiss plaintiff's complaint.

## CONCLUSION

Accordingly, based on the foregoing, the Clerk of the Court shall dismiss the Amended Complaint without prejudice for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

No costs.

---

**6.** Plaintiff has cited *Garreaux,* 77 Fed.Cl. at 734–37, to support his claim of jurisdiction under the "Bad Men" clause. *Garreaux* held an agency incapable of qualifying as a "Bad Man" under this clause and found no jurisdiction for claims of "negligence and/or breach of contract." *Id.* at 737.

**7.** Plaintiff has failed to set forth sufficient facts to justify a claim of racial discrimination. Thus, plaintiff's claims against the United States District Court for the District of Nebraska are primarily claims of negligence and do not qualify as wrongful acts for the purpose of the Fort Laramie Treaty.