# In the United States Court of Federal Claims

No. 13-319 C

(Filed: September 4, 2013)

|  |  |  |
|---|---|---|
| | ) | |
| IAN OWEN SHARPE et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Motion for Reconsideration; |
| v. | ) | Pro Se Plaintiffs; Frivolous |
| | ) | Claims; Sanctions Warranted |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Ian Owen Sharpe, Gregory R. Young and Michael Troy Olson, Marianna, FL, pro se.

Veronica N. Onyema, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

OPINION

HEWITT, Chief Judge

I.      Background

Plaintiffs are inmates at the Federal Correctional Institution in Marianna, Florida. See generally Allegation of Fed. Constitutional Question Jurisdiction (Compl.) (Complaint or Compl.), Docket Number (Dkt. No.) 1 (listing "[Federal Correctional Institution] Marianna" as plaintiffs' address). Plaintiffs filed their Complaint in this court "challeng[ing] the Constitutional Enactment validity" of federal bill H.R. 3190 (the bill), which was passed in 1948 as Pub. L. No. 80-772 and codified as amended in title 18 of the United States Code, governing crimes and criminal procedure. See id. at 1-2. Specifically, plaintiffs' Complaint claimed that the bill "was never passed Constitutionally by the House of Representatives," was never "certified as 'truly enrolled' by" officials eligible to sign the bill into law, was "never voted upon by . . . Congress," and was, therefore, "mistakenly signed by" President Harry Truman. Id. at 1 (emphasis and some capitalization omitted). Plaintiffs alleged that the "impermissible application of [this] unconstitutional statute . . . continues [to] depriv[e] the Plaintiffs of

due process, life, liberty, and property interests and defrauds the [United States Department of the] Treasury." Id. (emphasis omitted).

"[B]ecause the Complaint [did] not address any matter within the jurisdiction of the court," the court dismissed the Complaint sua sponte. Order of May 21, 2013, Dkt. No. 8, at 1. This case was closed on May 22, 2013. See generally J., Dkt. No. 9 (entering judgment for defendant and dismissing the Complaint). Since then, plaintiffs have submitted a number of documents to the court, most of which have been returned unfiled. See, e.g., Order of May 30, 2013, Dkt. No. 10, at 1; Order of June 5, 2013, Dkt. No. 11, at 1; Order of June 27, 2013, Dkt. No. 14, at 2-4; Order of July 31, 2013, Dkt. No. 17, at 2 (returning documents unfiled).

Now before the court are plaintiffs' Motion to Reconsider and Transfer to Cure Want of Jurisdiction (plaintiffs' Motion or Pls.' Mot.), Dkt. No. 15, filed June 27, 2013, and Defendant's Response to Plaintiffs' Motion to Reconsider and Transfer to Cure Want of Jurisdiction (defendant's Response or Def.'s Resp.), Dkt. No. 16, filed July 15, 2013.[1]

---

[1] Plaintiffs have also submitted a document titled "Application (Motion) for Default Judgment (RCFC Rule 55(b)(2))" (plaintiffs' Application), received on August 5, 2013. On August 12, 2013 the court received additional copies of plaintiffs' Application. Plaintiffs' Application has not been filed by the office of the Clerk of Court because this case was closed on May 22, 2013. See generally J., Docket Number (Dkt. No.) 9 (entering judgment for defendant and dismissing plaintiffs' Allegation of Fed. Constitutional Question Jurisdiction (Complaint or Compl.), Dkt. No. 1). Plaintiffs' Application argues, among other things, that the court should enter default judgment against defendant because, according to plaintiffs, defendant failed to respond to all of the points raised in plaintiffs' motion for reconsideration, which is currently before the court. See generally Mot. to Reconsider & Transfer to Cure Want of Jurisdiction (plaintiffs' Motion or Pls.' Mot.), Dkt. No. 15.

Pursuant to Rule 55 of the Rules of the United States Court of Federal Claims (RCFC), "a party against whom a judgment for affirmative relief is sought" is in default if that party "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." RCFC 55(a). The court shall enter a default judgment against a party in default if, by application to the court, "the claimant establishes a claim or right to relief by evidence that satisfies the court." RCFC 55(b)(2).

Here, default judgment is not appropriate given the procedural posture of this case: the court has already entered judgment for defendant. See generally J. To the extent that plaintiffs seek default judgment based on the argument that defendant failed to defend against plaintiffs' Motion, plaintiffs' argument is inapposite. As ordered by the court, see Order of June 27, 2013, Dkt. No. 14, at 3; cf. RCFC 59(f) (allowing a response to a motion for reconsideration "only at the court's request"), defendant filed a response in opposition to plaintiffs' Motion, see generally Def.'s Resp. to Pls.' Mot. to Reconsider & Transfer to Cure Want of Jurisdiction (defendant's Response or Def.'s Resp.), Dkt. No. 16. Defendant, therefore, did not fail to defend against plaintiff's Motion. Cf. RCFC 55(a) (describing default). Further, even if defendant's Response

2

Plaintiffs also submitted a reply brief with respect to their Motion, which the court returned unfiled because "there was no provision for [its] filing" and because plaintiffs failed to include an original and two copies, as required by Rules of the United States Court of Federal Claims (RCFC). Order of July 31, 2013, at 1-2; cf. RCFC 5.5(d)(2) (requiring "an original and 2 copies of any filing" made after the complaint). On August 12, 2013 the court received a resubmission of plaintiffs' reply brief, along with another document titled Ex Parte Motion for Leave to File Nunc Pro Tunc Reply Brief to Defendants' [sic] Ordered Response (collectively, plaintiffs' reply submission). Plaintiffs' reply submission was not filed on receipt by the office of the Clerk of Court because, although this time plaintiffs included an original and two copies of their reply brief pursuant to the court's rules, cf. RCFC 5.5(d)(2), there remains no provision for the filing of such a submission,[2] see RCFC 59 (providing for the filing of a response to a

did not address every argument raised in plaintiffs' Motion, there is no requirement that it do so. Cf. RCFC 59(f) (governing responses to motions for reconsideration or for altering or amending a judgment).

Further, to the extent that plaintiffs argue that defendant is in default because it failed to respond to plaintiffs' Complaint, the court dismissed plaintiffs' Complaint sua sponte for lack of jurisdiction twenty-one days after plaintiffs' Complaint was deemed filed, see Order of May 21, 2013, Dkt. No. 8, at 1 (dismissing plaintiffs' Complaint); Order of June 13, 2013, Dkt. No. 13, at 5 ("Plaintiffs' Complaint is . . . deemed filed on April 30, 2013), that is, within the sixty-day time period before any response by defendant to plaintiffs' Complaint was due, cf. RCFC 12(a)(1)(A) ("The United States must file an answer to a complaint within 60 days after being served with the complaint."); RCFC 4(c) (providing that the date of service of a complaint "is the date of filing with the clerk"). Accordingly, defendant is not in default because defendant did not fail to defend this case. Cf. RCFC 55(a) (stating that "a party against whom a judgment for affirmative relief is sought" is in default if that party "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise"); RCFC 12(h)(3) (authorizing the court to dismiss an action for lack of subject matter jurisdiction "at any time").

Because a motion for default judgment is inappropriate at this juncture and because, to the extent that plaintiffs' Application is the functional equivalent of a motion for reconsideration or to alter or amend the judgment, plaintiffs already have a motion for reconsideration or to alter or amend the judgment before the court, the office of the Clerk of Court SHALL RETURN, UNFILED, all copies of plaintiffs' Application.

[2] In their Ex Parte Motion for Leave to File Nunc Pro Tunc Reply Brief to Defendants' [sic] Ordered Response, plaintiffs invoke RCFC 7.2 as a basis for filing their reply brief. Rule 7.2 provides in relevant part that, in general, "[a] reply to a response . . . may be filed within 7 days after service of the response." RCFC 7.2(a)(2). However, Rule 7.2(a) applies only if the filing of a response is not "otherwise provided in these rules or by order of the court." See RCFC 7.2(a)(1). And the court's rules contain very specific provisions about the filing of a response to a motion for reconsideration or to alter or amend a judgment. See RCFC 59(f) (providing that a response to a motion for reconsideration or to alter or amend a judgment "may be filed only at the court's request"); cf. Order of June 27, 2013, at 3 (ordering defendant to file a

motion for reconsideration or a motion to alter or amend a judgment "at the court's request" but containing no provision for the filing of a reply to such a motion). Accordingly, the office of the Clerk of Court SHALL RETURN, UNFILED, plaintiffs' reply submission.

Plaintiffs' Motion argues that this court erred in dismissing plaintiffs' claims for lack of jurisdiction, see Pls.' Mot. 1-6, and, in the alternative, that transfer is warranted to cure any lack of jurisdiction, id. at 7-8. Defendant responds that plaintiffs have "fail[ed] to demonstrate that they meet the standard for reconsideration" and that "transferring the case . . . would not be in the interest of justice." Def.'s Resp. 1. For the following reasons, plaintiffs' Motion is DENIED.

II.     Legal Standards

A.      Motion for Reconsideration

Pursuant to RCFC 59, the court may grant a motion for reconsideration "for any reason for which a new trial has heretofore been granted in an action at law in federal court" or "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." RCFC 59(a)(1)(A)-(B). The court may also grant a motion for reconsideration "upon the showing of satisfactory evidence, cumulative or otherwise, that any fraud, wrong, or injustice has been done to the United States." RCFC 59(a)(1)(C). In addition, the court may open a judgment, "take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment" on a motion under RCFC 59. RCFC 59(a)(2).

The moving party must support its motion for reconsideration by a showing of exceptional circumstances justifying relief, based on "a manifest error of law or mistake of fact." Henderson Cnty. Drainage Dist. No. 3 v. United States (Henderson), 55 Fed. Cl. 334, 337 (2003) (citing Franconia Assocs. v. United States, 44 Fed. Cl. 315, 316 (1999), aff'd, 240 F.3d 1358 (Fed. Cir. 2001), rev'd on other grounds, 536 U.S. 129 (2002)); Principal Mut. Life Ins. Co. v. United States, 29 Fed. Cl. 157, 164 (1993) (same) (citing Weaver-Bailey Contractors, Inc. v. United States, 20 Cl. Ct. 158, 158 (1990)), aff'd, 50 F.3d 1021 (Fed. Cir. 1995)). "Specifically, the moving party must show: (1) the occurrence of an intervening change in the controlling law; (2) the availability of previously unavailable evidence; or (3) the necessity of allowing the motion to prevent manifest injustice." Matthews v. United States, 73 Fed. Cl. 524, 526 (2006) (citing Griswold v. United States, 61 Fed. Cl. 458, 460-61 (2004)).

Where a party seeks reconsideration on the ground of manifest injustice, it cannot prevail unless it demonstrates that any injustice is "apparent to the point of being almost

response to plaintiffs' Motion). Therefore, with respect to a motion for reconsideration or to alter or amend a judgment, it is Rule 59 that provides for briefing, not Rule 7.2.

indisputable." Pac. Gas & Electric Co. v. United States, 74 Fed. Cl. 779, 785 (2006), aff'd in part and rev'd in part on other grounds, 536 F.3d 1282 (Fed. Cir. 2008). In other words, "manifest" is understood as "clearly apparent or obvious." Ammex, Inc. v. United States, 52 Fed. Cl. 555, 557 (2002), aff'd, 384 F.3d 1368 (Fed. Cir. 2004).

"A motion for reconsideration is not intended . . . to give an 'unhappy litigant an additional chance to sway' the court." Matthews, 73 Fed. Cl. at 525 (quoting Froudi v. United States, 22 Cl. Ct. 290, 300 (1991)). A motion for reconsideration is not an opportunity to make new arguments that could have been made earlier; "an argument made for the first time in a motion for reconsideration comes too late, and is ordinarily deemed waived." Bluebonnet Sav. Bank, F.S.B. v. United States (Bluebonnet), 466 F.3d 1349, 1361 (Fed. Cir. 2006); Gen. Electric Co. v. United States, 189 Ct. Cl. 116, 118, 416 F.2d 1320, 1322 (1969) (per curiam) (stating that, in general, "requests for post-decision relief will be rejected if the [movant] has, without sufficient excuse, failed to make his point prior to the decision").

B.    Transfer

When the court dismisses a case for lack of jurisdiction, it has an obligation to determine whether transfer to another federal court that may have jurisdiction over the claims is appropriate. See 28 U.S.C. § 1631 (2006) (stating that "the court shall, if it is in the interest of justice, transfer [a case over which it lacks jurisdiction] to any other such court in which the action or appeal could have been brought at the time it was filed or noticed"); Tex. Peanut Farmers v. United States, 409 F.3d 1370, 1375 (Fed. Cir. 2005) (recognizing "the statutory requirement that transfer be considered to cure jurisdictional defects"); cf. 28 U.S.C. § 610 (defining "courts" to which transfer is allowed under 28 U.S.C. § 1631).

C.    Authority to Order Sanctions

The court has "inherent powers enabling it to manage its cases and courtroom effectively and to ensure obedience to its orders." Pac. Gas & Electric Co. v. United States (PG&E), 82 Fed. Cl. 474, 480 (2008) (internal quotation marks and brackets omitted); see In re Bailey, 182 F.3d 860, 864 (Fed. Cir. 1999) ("The United States Supreme Court and federal courts of appeals have repeatedly recognized that regulation of attorney behavior is an inherent power of any court of law and falls within the discretion of such court."). "These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) (internal quotation marks omitted). "Because of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." Id. at 44-45 (internal citation omitted).

5

The court also has authority to sanction based on Rule 11 of the RCFC.[3] Rule 11 requires an attorney or unrepresented party to make certain certifications about any documents presented to the court, based on "an inquiry reasonable under the circumstances." RCFC 11(b). Rule 11 sanctions are appropriate when an attorney or unrepresented party fails to act with "candor and truthfulness" in making such certifications. See PG&E, 82 Fed. Cl. at 478 n.2; cf. RCFC 11(b)-(c) (describing bases for Rule 11 sanctions). "In evaluating whether the signer of a filing has violated Rule 11, the . . . court applies an objective standard of reasonableness . . . ." Colida v. Nokia, Inc., 347 F. App'x 568, 571 (Fed. Cir. 2009) (unpublished) (internal quotation marks omitted). In determining whether an anti-filing injunction is appropriate under Rule 11, the trial court "should make findings 'as to any pattern' of behavior, looking to 'both the number and content of the filings as indicia of frivolousness and harassment.'" Hemphill v. Kimberly-Clark Corp., 374 F. App'x 41, 45 (Fed. Cir. 2010) (unpublished) (quoting In re Powell, 851 F.2d 427, 431 (D.C. Cir. 1988)).

A court's inherent power to impose sanctions "is both broader and narrower than" the court's sanctioning authority under Rule 11. See Chambers, 501 U.S. at 46. It is broader in that it "extends to a full range of litigation abuses." Id. And it is narrower in that, with respect to "a court's inherent power to impose attorney's fees as a sanction" in particular, it is effectively limited to "cases in which a litigant has engaged in bad-faith conduct or willful disobedience of a court's orders," as distinguished from "conduct which merely fails to meet a reasonableness standard." Id. at 47; cf. RCFC 11(b) (imposing a reasonableness standard). "[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, . . . the Rules are [not] up to the task, the court may safely rely on its inherent power." Chambers, 501 U.S. at 50; see id. at 45-46 (describing conduct that may warrant sanctions pursuant to the court's inherent powers, including "willful disobedience of a court order," actions of a party that are "in bad faith, vexatious[], wanton[], or for oppressive reasons," practicing fraud upon the court or defiling "the very temple of justice," or "delaying or disrupting the litigation or . . . hampering enforcement of a court order" (internal quotation marks omitted)).

III.    Discussion

---

[3] The Rules of the United States Court of Federal Claims generally mirror the Federal Rules of Civil Procedure (FRCP). See RCFC 2002 rules committee note ("[I]nterpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure."). RCFC 11 is substantially identical to Rule 11 of the FRCP. Compare RCFC 11, with FRCP 11. Therefore, the court relies on cases interpreting FRCP 11 as well as those interpreting RCFC 11.

In their Motion, plaintiffs assert several bases that, they claim, provided the court with jurisdiction over their Complaint and also argue that their Complaint alleged sufficient facts to withstand a motion to dismiss.[4] See Pls.' Mot. 1-5. In other words, plaintiffs appear to argue that reconsideration is warranted to prevent manifest injustice because, according to plaintiffs, the court made an error of law in dismissing their Complaint for lack of jurisdiction. Cf. Matthews, 73 Fed. Cl. at 526 (requiring that, to prevail on a motion for reconsideration, "the moving party must show: (1) the occurrence of an intervening change in the controlling law; (2) the availability of previously unavailable evidence; or (3) the necessity of allowing the motion to prevent manifest injustice"); Henderson, 55 Fed. Cl. at 337 (stating that the moving party must support its motion for reconsideration by a showing of exceptional circumstances justifying relief, based on "a manifest error of law or mistake of fact"). In the alternative, plaintiffs request that their case be transferred to cure a lack of jurisdiction. Pls.' Mot. 7-8. Defendant responds that plaintiffs have "fail[ed] to demonstrate that they meet the standard for reconsideration," Def.'s Resp. 1, and argues that any new arguments by plaintiffs regarding jurisdictional bases are untimely, id. at 4. Defendant also argues that "transferring the case . . . would not be in the interest of justice and would be instead a waste of judicial resources." Id. at 1. The court considers each of these arguments in turn.

A.      Reconsideration Is Not Warranted

Plaintiffs' Motion has failed to show that the court made a mistake of law in dismissing plaintiffs' claims for lack of jurisdiction. First, plaintiffs argue that the Tucker Act provides this court with jurisdiction over "any claim against the United States" and that their "Complaint certainly [fell] within [that] scope." Pls.' Mot. 3 (some capitalization omitted) (citing 28 U.S.C. 1491(a)(1)) [5]; cf. Compl. 2 ("Congress has given

---

[4] Plaintiffs also contend that their claims are not barred by the court's six-year statute of limitations, see Pls.' Mot. 5-6, but this contention is relevant only with respect to a claim that is otherwise within the court's jurisdiction, see 28 U.S.C. § 2501 (2006) (providing that a claim over which the court would otherwise have jurisdiction "shall be barred unless the petition thereon is filed within six years after such claim first accrues"). Because none of plaintiffs' claims are within the court's jurisdiction, see infra Part III.A (affirming that "plaintiffs' Complaint failed to identify any proper basis for this court's jurisdiction" and that, accordingly, "the court was required to dismiss the case"), the court need not reach the question of whether any of plaintiffs' claims would have been time-barred.

[5] To the extent that plaintiffs also rely on 28 U.S.C. § 1491(b), see Pls.' Mot. 3, plaintiffs' reliance is misplaced. The provisions of 28 U.S.C. § 1491(b) pertain to this court's bid protest jurisdiction only and are therefore not relevant to this litigation. See 28 U.S.C. § 1491(b)(1) (granting the United States Court of Federal Claims concurrent jurisdiction with the United States district courts to hear "an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or

the United States Court of Federal Claims jurisdiction over these types of disputes in Title 28 USC §1491(a)(1) to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress." (internal quotation marks and some capitalization omitted)).  However, plaintiffs misunderstand this court's jurisdiction.  A plaintiff invoking the jurisdiction of the United States Court of Federal Claims (Court of Federal Claims) pursuant to the Tucker Act must establish an independent, substantive right to money damages from the United States--that is, a money-mandating source within a contract, regulation, statute or constitutional provision--in order to satisfy the court that its jurisdiction is proper.  See Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008); cf. United States v. Mitchell, 463 U.S. 206, 216 (1983) ("Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act.  The claim must be one for money damages against the United States . . . .").

Plaintiffs also contend that this court has jurisdiction pursuant to article III, section two of the United States Constitution.  Pls.' Mot. 1-2; cf. Compl. 2 (stating that "[t]his court has jurisdiction of the subject-matter of this action because the claims asserted in it arise out of the Constitution" and "request[ing] this Court of Federal Claims to convene under its original character whereby:  Such court is hereby declared to be a court established under Article III of the Constitution of the United States" (emphasis, internal quotation marks and some capitalization omitted)).  However, "[t]he Court of Federal Claims is an Article I trial court of limited jurisdiction that was created by Congress"; it is not an article III court.  Kanemoto v. Reno, 41 F.3d 641, 644 (Fed. Cir. 1994).  Accordingly, the jurisdiction of the Court of Federal Claims "does not depend on the 'arising under' clause of Article III."  Jan's Helicopter Serv., Inc., 525 F.3d at 1305; cf. U.S. Const. art. III, § 2, cl. 1 ("The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority[.]").  Instead, the court's jurisdiction depends "on a separate clause in Article III that authorizes jurisdiction over all controversies to which the United States is a party" and on the Tucker Act.  Jan's Helicopter Serv., Inc., 525 F.3d at 1305-06 (internal quotation marks omitted); cf. U.S. Const. art. III, § 2, cl. 1 (stating that the judicial power shall extend "to Controversies to

proposed procurement").  In particular, plaintiffs request that the court issue declaratory judgment pursuant to 28 U.S.C. § 1491(b)(2).  See Pls.' Mot. 3-4 (arguing, for example, that declaratory judgment would "be in the interests of justice, due to the countless inconsistencies in the numerous US District Court decisions enumerated within the Complaint" (internal quotation marks omitted)).  However, declaratory judgment pursuant to 28 U.S.C. § 1491(b)(2) is available only with regard to the type of actions described in subsection (b)(1), that is, actions within the court's bid protest jurisdiction.  See 28 U.S.C. § 1491(b)(1)-(2).  Moreover, as defendant correctly points out, see Def.'s Resp. 3, "the [United States] Court of Federal Claims does not have jurisdiction to review the decisions of district courts," Joshua v. United States, 17 F.3d 378, 380 (Fed. Cir. 1994), to the extent that this is what plaintiffs seek.

8

which the United States shall be a party"); 28 U.S.C. § 1491(a)(1) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."). It is well-established that a claim is within the court's Tucker Act jurisdiction only if the plaintiff has identified a separate money-mandating source. See Jan's Helicopter Serv., Inc., 525 F.3d at 1306. Plaintiffs' Complaint has "identifie[d] no source of substantive law that would create a right to money damages." Order of May 21, 2013, at 2.

Plaintiffs' Motion invokes a number of statutes, which plaintiffs appear to assert as bases of an unjust imprisonment claim, starting with 18 U.S.C. § 4001(a). See Pls.' Mot. 2. This provision states that "[n]o citizen shall be imprisoned or otherwise detained by the United States except pursuant to an Act of Congress." 18 U.S.C. § 4001(a) (2006). Notwithstanding that plaintiffs appear to invoke this provision for the first time in their Motion, cf. Bluebonnet, 466 F.3d at 1361 ("[A]n argument made for the first time in a motion for reconsideration comes too late, and is ordinarily deemed waived."); Gen. Electric Co., 189 Ct. Cl. at 118, 416 F.2d at 1322 (similar), the provision is not money mandating, cf. Jan's Helicopter Serv., Inc., 525 F.3d at 1306 (requiring a plaintiff invoking this court's jurisdiction pursuant to the Tucker Act to establish an independent, substantive right to money damages from the United States).

Further, to the extent that plaintiffs rely on 42 U.S.C. § 1985 in conjunction with 28 U.S.C. § 1343(a)(2) as sources of substantive law that would provide a right to money damages, see Pls.' Mot. 4-5; Compl. 15-16, plaintiffs misunderstand the scope of these provisions. Plaintiffs are correct, see Pls.' Mot. 5, that 28 U.S.C. § 1343(a)(2) creates a right "[t]o recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent," 28 U.S.C. § 1343(a)(2); see also 42 U.S.C. § 1985(2)-(3) (2006) (providing that conspiring to intimidate a party or a witness or to obstruct justice with the "intent to deny any citizen the equal protection of the laws" or conspiring to deprive a person of rights and privileges under the laws each constitutes a conspiracy to interfere with civil rights). However, jurisdiction to hear such a claim belongs exclusively to the district courts, see 28 U.S.C. § 1343(a) (stating that "[t]he district courts shall have original jurisdiction" over claims under 28 U.S.C. § 1343(a)(2)), and the Court of Federal Claims is not a district court, Ledford v. United States, 297 F.3d 1378, 1382 (Fed. Cir. 2002) (per curiam).

Moreover, to the extent that plaintiffs assert violations of their rights pursuant to 18 U.S.C. §§ 241-42, see Pls.' Mot. 5; Compl. 16, such claims are misplaced. These statutes provide for criminal penalties for conspiring against rights, see 18 U.S.C. § 241, and for deprivation of rights under color of law on the basis of a person's status as an

9

alien or by reason of color or race, id. § 242.  The Tucker Act expressly excludes tort claims, including claims of civil rights violations, from this court's jurisdiction.  See 28 U.S.C. 1491(a)(1) (describing the court's jurisdiction as including certain types of cases "not sounding in tort"); Hernandez v. United States, 93 Fed. Cl. 193, 198 (2010) ("[T]his [court's] jurisdiction . . . does not extend to claims sounding in tort for civil wrongs committed by the United States or its agents."); cf. Salman v. Kalil, 144 F. App'x 861, 862 (Fed. Cir. 2005) (per curiam) (unpublished) (finding that the plaintiff's complaint was "grounded in tort" based on the plaintiff's allegation that the circumstances of his arrest and arraignment constituted "false imprisonment and fraud").  Further, the statutes cited by plaintff create no right to bring a private civil action in this court.

Plaintiffs also invoke 28 U.S.C. § 1495 in conjunction with 28 U.S.C. § 2513.  See Pls.' Mot. 5.  Notwithstanding that plaintiffs failed to assert these provisions in their Complaint as a basis for their claims and, instead, invoke them for the first time in their Motion, cf. Bluebonnet, 466 F.3d at 1361 ("[A]n argument made for the first time in a motion for reconsideration comes too late, and is ordinarily deemed waived."); Gen. Electric Co., 189 Ct. Cl. at 118, 416 F.2d at 1322 (similar), plaintiffs misunderstand what is required to assert a section 1495 claim.  28 U.S.C. § 1495 grants the Court of Federal Claims "jurisdiction to render judgment upon any claim for damages by any person unjustly convicted of an offense against the United States and imprisoned."  28 U.S.C. § 1495.  However, as a condition of bringing suit under section 1495, a plaintiff must allege and prove--by a certificate of a court or a pardon--that, among other things, his wrongful "conviction has been reversed or set aside" or "he has been pardoned upon the stated ground of innocence and unjust conviction."  Id. § 2513(a)-(b).  Not only did plaintiffs fail to make the required allegations for a section 1495 claim in their Complaint, they also failed to provide the required proof.  Cf. id.  Therefore, even if plaintiffs had not waived their right to make an unjust conviction and imprisonment argument under section 1495, they have not met the requirements for bringing such a claim.

Plaintiffs' Motion also appears to assert for the first time a standalone claim based on the Due Process Clause of the Fifth Amendment to the United States Constitution.  See Pls.' Mot. 6 ("The Plaintiffs would be remiss to not also draw the Court's attention to the serious due process violations perpetrated by the U.S. District Courts[] in each of the 100+ cases described in the Complaint . . . ." (emphasis and internal quotation marks omitted).  Notwithstanding that plaintiffs appear to invoke the Due Process Clause for the first time in their Motion, cf. Bluebonnet, 466 F.3d at 1361 ("[A]n argument made for the first time in a motion for reconsideration comes too late, and is ordinarily deemed waived."); Gen. Electric Co., 189 Ct. Cl. at 118, 416 F.2d at 1322 (similar), this court lacks jurisdiction over plaintiffs' due process claim because the Due Process Clause is not money mandating, cf. James v. Caldera, 159 F.3d 573, 581 (Fed. Cir. 1988) (stating that "it is well established" that this court lacks jurisdiction over due process claims because the Due Process Clause is not money mandating); United States v. Connolly, 716

F.2d 882, 887 (Fed. Cir. 1983) (en banc) (similar).[6]  Further, to the extent that plaintiffs seek review of the alleged "serious due process violations perpetrated by the U.S. District Courts[]," Pls.' Mot. 6, "the Court of Federal Claims does not have jurisdiction to review the decisions of district courts," Joshua v. United States, 17 F.3d 378, 380 (Fed. Cir. 1994).

Because plaintiffs' Complaint failed to identify any proper basis for this court's jurisdiction, see Order of May 21, 2013, at 2, the court was required to dismiss the case, cf. RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Plaintiffs' contention that their Complaint alleged sufficient facts to withstand a motion to dismiss, see Pls.' Mot. 4, is therefore misplaced. It is irrelevant to the court's jurisdictional analysis that, according to plaintiffs, the factual "allegations within the Complaint have never been rebutted." Cf. id. (some capitalization omitted).

For the foregoing reasons, the court concludes that plaintiffs have failed to show any manifest error of law with respect to the court's jurisdictional determination and, accordingly, reconsideration of this issue is not warranted. Cf. Matthews, 73 Fed. Cl. at 526 (stating that a party may prevail on a motion for reconsideration by showing "the necessity of allowing the motion to prevent manifest injustice"); Henderson, 55 Fed. Cl. at 337 (stating that a motion for reconsideration may be supported by a showing of exceptional circumstances justifying relief, based on "a manifest error of law").

B.      Transfer Is Not in the Interest of Justice

Plaintiffs appear to request that, should their motion for reconsideration be denied, their case be transferred to the appropriate United States district court or the United States Supreme Court (Supreme Court) or that their questions be certified to the Supreme Court. See Pls.' Mot. 7 (requesting that, in the alternative, the court "re-assign the case to a certifiable U.S. Const. Article III Judicial powers vested Judge" and invoking 28 U.S.C. § 1631); id. at 9 (requesting "that the Court also recommend and certify the questions for review . . . and recommend this entire Case in Controversy be elevated to the Supreme Court for consideration and decision" (emphasis and some capitalization omitted)).

Pursuant to 28 U.S.C. § 1631, "the court shall, if it is in the interest of justice, transfer [a case over which it lacks jurisdiction] to any other such court in which the action or appeal could have been brought at the time it was filed or noticed." 28 U.S.C. §

---

[6] A constitutional issue may be "a factor in [a] claim for which Tucker Act jurisdiction is established." See Holley v. United States, 124 F.3d 1462, 1466 (Fed. Cir. 1997). However, plaintiffs have failed to establish that any of their claims is within this court's jurisdiction. See supra Part III.A. Therefore the court does not reach the question of whether due process issues are a factor with respect to any of plaintiffs' other claims. Cf. id.

11

1631. Although the courts to which transfer is permissible include the United States district courts, they do not include the Supreme Court. See id. § 610 (defining "courts" to which transfer is allowed under 28 U.S.C. § 1631 as including "the courts of appeals and district courts of the United States" but not the Supreme Court). In addition, only a court of appeals can certify a question for review by the Supreme Court. See 28 U.S.C. § 1254 (allowing for certification "of any question of law" to the Supreme Court "by a court of appeals" but not by the Court of Federal Claims). Accordingly, this court has no authority to transfer plaintiffs' case to the Supreme Court, cf. 28 U.S.C. § 1631; id. § 610, or to certify any of plaintiffs' questions to the Supreme Court, cf. id. § 1254.

With respect to plaintiffs' request to transfer their case to a district court, the court finds that transfer would not be in the interest of justice. At least two of the three plaintiffs named on the caption have a history of filing frivolous claims in which the plaintiffs challenged their criminal convictions in various ways. See, e.g., Am. Report & Recommendation & Order at 1-2, Olson v. English, No. 5:13-cv-195-RS-GRJ (N. D. Fla. July 24, 2013), Dkt. 8 (recommending denial of plaintiff Michael Troy Olson's (Mr. Olson) petition for writ of habeas corpus and discussing Mr. Olson's history of filing multiple "pro se motions attacking his convictions and sentence in various ways," multiple motions purportedly asserting First Amendment rights and multiple "'First Amendment Petitions,' in which he argued that the district court lacked subject matter and legislative jurisdiction over him," all of which were denied as without merit, untimely, successive or as procedurally deficient), approved and incorporated by Order of Aug. 22, 2013, Olson v. English, No. 5:13-cv-195-RS-GRJ (N. D. Fla. Aug. 22, 2013), Dkt. 9 (dismissing petition); Order of Jan. 31, 2011 at 1-2, Olson v. Holinka, No. 10-cv-824-bbc (W.D. Wis. Jan. 31, 2011), Dkt. No. 3 (denying Mr. Olson's petition for writ of habeas corpus after concluding that Mr. Olson did "not even attempt to make the [requisite] showing" and that his argument, to the extent that the court could discern it as his argument, was "a frivolous one"); Order of May 12, 2009 at 2, 4, Olson v. Holinka, No. 09-cv-161-slc (W.D. Wis. May 12, 2009), Dkt. No. 7 (denying Mr. Olson's petition for writ of habeas corpus regarding the same conviction because Mr. Olson's arguments that 28 U.S.C. § 2255 was not properly enacted and that "the district court in which he was convicted had no authority to sentence him because it [was] an Executive Tribunal without Article II powers" were both "frivolous" (internal quotation marks omitted)); Report & Recommendation at 1-2, Sharpe v. "Doe" Agent, U.S. Customs, No. C02-607R (W.D. Wash. Apr. 1, 2002), Dkt. No. 5 (finding that the Bivens action filed by plaintiff Ian Owen Sharpe against a federal customs agent was "frivolous" and rejecting plaintiff's claim that he should be granted clemency with respect to his illegal reentry conviction on the grounds that the agent advised him that he could reenter the United States), adopted by Order of Dismissal, Sharpe v. "Doe" Agent, U.S. Customs, No. C02-607R (W.D. Wash. Apr. 30, 2002), Dkt. No. 6.

Plaintiffs' history of a pattern of filing in bad faith suggests that this action was filed in bad faith as well. In the court's opinion, the repeated filing of frivolous

12

actions--alleging that, for a variety of reasons, plaintiffs' convictions should be overturned--wastes judicial resources and abuses the judicial process. Accordingly, it is not in the interest of justice to transfer this case. Cf. 28 U.S.C. § 1631 (providing that the court shall transfer a case if, in addition to other requirements, transfer "is in the interest of justice").

   C.  Sanctions Warranted

   Based on a review of plaintiffs' history in this and other courts, plaintiffs' conduct warrants sanction pursuant to the court's inherent power to impose sanctions. Cf. Chambers, 501 U.S. at 50-51 (affirming appeals court finding of "no abuse of discretion in resorting to the inherent power" even though sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure could have been employed because only the inherent power could reach an "entire course of conduct" that "evidenced bad faith and an attempt to perpetrate a fraud on the court"). Sanctions under the court's inherent power are more appropriate in the present case than sanctions under Rule 11 of the RCFC because plaintiffs have not failed to act with candor and truthfulness in their dealings with the court. Compare PG&E, 82 Fed. Cl. at 478 n.2 ("Because counsel never attempted to mislead the court nor acted with dishonesty toward the court in a pleading or filing, RCFC 11 is not an appropriate basis upon which to fashion sanctions or remedies in this case."), and RCFC 11(b)-(c) (describing bases for Rule 11 sanctions), with Chambers, 501 U.S. at 50-51 (stating that only the inherent power could provide authority to sanction an "entire course of conduct" that "evidenced bad faith"). As described below, plaintiffs' filings demonstrate an entire course of conduct evidencing bad faith. Cf. Chambers, 501 U.S. at 44-45, 47 (stating that the court may rely on its inherent powers to "fashion an appropriate sanction for conduct which abuses the judicial process," including "bad-faith conduct or willful disobedience of a court's orders").

   Specifically, Mr. Olson and Mr. Sharpe have a history of filing frivolous actions. See supra Part III.B (stating that it is the court's opinion that "repeatedly filing frivolous actions" is bad faith conduct that wastes judicial resources and abuses the judicial process). Mr. Sharpe has also had multiple actions dismissed for failure to follow court rules and orders. See, e.g., Order of June 28, 2002 at 1, Sharpe v. U.S. Customs Serv., No. 02-35455 (9th Cir. June 28, 2002), Dkt. No. 5 (dismissing appeal for failure to prosecute owing to plaintiff's failure to pay filing fees); Order of July 22, 2003 at 1, Sharpe v. USP Leavenworth, No. 5:03-3215-GTV (D. Kan. July 22, 2013), Dkt. No. 5 (dismissing case owing to plaintiff's failure "to show cause why this action should not be dismissed . . . due to his failure to exhaust administrative remedies"); Order of Apr. 17, 2003 at 1, Sharpe v. U.S. Dep't of Justice, No. 5:02-3320-GTV (D. Kan. Apr. 17, 2003), Dkt. No. 6 (dismissing case owing to plaintiff's failure to supplement the record as directed by the court); Order of July 5, 2002 at 1, Sharpe v. Stratman, No. 5:02-3006-GTV (D. Kan. July 5, 2002), Dkt. No. 5 (dismissing case owing to plaintiff's failure to pay filing fees). Although the court is not aware of a similar history of bad faith filings in

13

other courts by plaintiff Gregory R. Young, in the present case, all three plaintiffs have participated in sending an excessive number of submissions to this court that had to be returned, unfiled, by the office of the Clerk of Court.  See Order of May 21, 2013, Dkt. No. 7, at 1-2 (returning plaintiffs' submission because it failed to comply with the court's rules and made premature discovery requests); supra Part I (noting additional submissions that have had to be returned, unfiled, since this case was closed and returning, unfiled, plaintiffs' reply submission and multiple submissions of plaintiffs' motion for default judgment); supra note 1 (describing the return, unfiled, of multiple submissions of plaintiffs' "Application (Motion) for Default Judgment (RCFC Rule 55(b)(2))").

Accordingly, the court concludes that, through this course of conduct, plaintiffs have demonstrated "conduct which abuses the judicial process."  Cf. Chambers, 501 U.S. at 44-45.  Such conduct is the proper subject of an exercise of this court's discretion to "fashion an appropriate sanction" pursuant to its inherent power.  Cf. id. at 44-45, 47 (stating that the court may rely on its inherent powers to "fashion an appropriate sanction for conduct which abuses the judicial process," including "bad-faith conduct or willful disobedience of a court's orders").

IV.     Conclusion

For the reasons stated, reconsideration of plaintiffs' claims is not warranted and transfer of any of plaintiffs' claims is not in the interest of justice.  Plaintiffs' Motion is therefore DENIED.  Further, because plaintiffs have demonstrated a course of conduct that abuses the judicial process, the office of the Clerk of Court SHALL REFER, unfiled, any future proposed filing by any of the plaintiffs, together with a copy of this Opinion, to a judge of the court, who will determine if any such proposed filing demonstrates indicia of being filed in bad faith.  If so directed by a judge of the court, the office of the Clerk of Court will reject such document for filing.

IT IS SO ORDERED.

_____
EMILY C. HEWITT
Chief Judge

14